IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 4:25-CV-00233-RSB-BWC |
| BOARD OF REGENTS OF THE | ) | |
| UNIVERSITY SYSTEM OF | ) | |
| GEORGIA and MEDICAL | ) | |
| COLLEGE OF GEORGIA AT | ) | |
| AUGUSTA UNIVERSITY | ) | |
| | ) | |
| Defendants. | ) | |

### DECLARATION OF JULIE KNEUKER

I, Julie Kneuker, declare as follows:

1.

My name is Julie Kneuker. The facts in this declaration are true and correct and are based on my personal knowledge and to the best of my recollection. I am over the age of majority and suffer no civil or legal disability. I give this declaration voluntarily for use in this civil action and for all other legal purposes.

2.

I am the Title IX Coordinator and Manager of Title IX and Clery Compliance at Augusta University. I have served in this role since February 2021. From June 2020 until February 2021, I worked as the Title IX investigator at

Augusta University. In my current position, it is my primary job to receive Title IX and non-Title IX sexual misconduct reports, provide supportive measures and resources to the parties and to coordinate the overall process. My goal is to assure that both parties maintain their access to their education with as little disruption as possible throughout the process. I am a neutral party and do not believe only women can be complainants. In fact, on my training power points that I use training various groups around campus, I include a graphic about busting the myth about Title IX—it is not gender specific. I am attaching Exhibit A which is a true and accurate copy of my training slide.

3.

Our Title IX office consists of myself and one full-time investigator, Kym Turner. Throughout all aspects of our duties whether it be training and outreach or through coordinating and investigating Title IX or non-Title IX sexual misconduct cases, we strive to do so following policy and best practices. We value professional development and utilize our professional membership with the Association of Title IX Administrators, also known as ATIXA through trainings, webinars, and best practices in the field. After Ms. Turner conducts the investigation, I review the report and provide input where necessary.

4.

I am responsible for training hearing panel members on Title IX/Sexual Misconduct process and policies. I maintain a list of University community members who volunteer to serve as panel members. First, I reduce the list based upon potential conflicts of interest, including whether they work in the same school as the parties. I reach out to the potential panelists to confirm their availability, without disclosing details about the complaint. In the hearing notice letter, the Hearing Officer notifies the parties of the potential panelists and gives them an opportunity to object. Once the panel members are finalized, I give them access to the final investigation report and supporting evidence. I schedule a pre-hearing meeting for refresher training, focusing especially on the potential charges and relevant definitions that will play a role in the hearing.

5.

During the hearing phase my primary role is assisting the Hearing Officer with administrative duties. During the subsequent deliberations by the panel members, I do not play a role other than to answer questions posed about policy and process.

6.

In the case at issue here, in the early afternoon of April 2, Dr. Elizabeth Gray reported Jane Roe's alleged sexual assault to me. I met with Jane Roe on April 4

to advise her of her options, formal process and procedures, as well as to assess the risk of the current situation so appropriate supportive measures and resources could be provided. The following week was spring break which I believe Jane Roe used to contemplate what to do. Jane Roe officially filed her complaint on April 10.

7.

Once I knew the complainant's decision I reached out to respondent John Doe on April 11, but he did not respond until April 14. During our conversation, I explained the allegations, the formal process and procedures and offered supportive measures and resources. Joe Doe told me that he did not sexually assault Jane Roe and that she was the aggressor. I responded by telling him that he had a right to file his own formal complaint. I also told him that I was not sure how procedurally a cross-complaint process would be handled, but I would consult with an expert in the field to find out. Since he became very upset during the Teams call, I texted Dr. Gray and asked her if someone could meet him in the parking lot to provide him with support. I followed up our conversation by email to John Doe attaching the complaint intake form directing him to return it to me if he wished to pursue as well as information on supportive resources.

8.

On April 15, I reached out to Brett Sokolow, Chair of the Board of ATIXA, for advice about best practices with cross complaints since this would be my first.

He provided me with process guidance but also advised me to tell John Doe that when he files his complaint, to make sure to explain how the sex was not consensual from his perspective. Brett also advised me to give John Doe a heads up that his complaint could be perceived as retaliatory.

9.

The same day, I followed up with John Doe and explained the process, advising him to provide clarity in his complaint as to why the sex was not consensual from his perspective. I made a point to explain ways it might not have been consensual such as due to force, threat, incapacitation, intimidation. As an example, I recall saying it might not be through (physical) force due to both parties saying at one point John Doe was in position from behind which could be viewed as being in (physical) control. I also gave him a heads up that it could be perceived as retaliatory. John Doe never filed a complaint or inquired further.

10.

During the April 14 Teams meeting with John Doe, I learned that John Doe reported the interaction with Jane Roe to Asst Dean Folami Powell. That same day, I requested information from Dr. Powell. She told me John Doe called her on the evening of April 2 requesting information on how to report a sexual assault. That same evening, she emailed him the link to the Title IX/Sexual Misconduct website specifically how to report an incident. The next day, Dr. Powell sent him my

direct phone number and told him that the Title IX office is aware and will be reaching out to him. But I did not know that John Doe wanted to file a cross complaint against Jane Roe until our April 14 conversation. He never reached out to my office, nor did Dr. Powell report it to me.

11.

During the investigation, I recall Kym telling me that one of the witnesses gave her a recording of a conversation with the respondent. I recall Kym telling me that she had listened to it, but it was hard to understand, and she could not get anything from it. It was not until after the draft report was sent to the parties for their 10-day review period that the complainant reached out to Kym and said she heard the recording existed and asked her to look into it. I advised Kym to take another look at it to be diligent and that is why she included it in the final report. It was not intentionally withheld from anyone nor did our office provide the complaint with the recording prior to the final report. It was not on Kym's radar to use as evidence until the complainant asked her to take a second look. Both parties had access to the recording before the hearing and used it during the hearing.

12.

I have reviewed the Facebook profile pictures of me attached as Exhibits I and J to John Does' motion. Those profile pictures included temporary filters that I added during Sexual Assault Awareness month. From 2015-2019, I worked at a

local rape crisis resource center. I do not associate the word survivor to mean female or male specifically.

13.

The hearing conducted was under our Sexual Misconduct Policy because it was considered a non-Title IX sexual misconduct allegation because it did not happen on campus.

14.

I have read the above and it is true and correct and based on my personal knowledge. As provided by 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 10th day of October, 2025.

*DocuSigned by:*
*Julie Kneuker*
643A4863D64F47B...
_____
Julie Kneuker

## Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: 7209623D-7AF7-48DC-9955-BCB8AF2CB01D | | Status: Completed |
| Subject: Complete with Docusign: KNEUKER Declaration~1.DOC.pdf | | |
| Source Envelope: | | |
| Document Pages: 7 | Signatures: 1 | Envelope Originator: |
| Certificate Pages: 1 | Initials: 0 | Julie Kneuker |
| AutoNav: Disabled | | 1120 15th Street |
| EnvelopeId Stamping: Disabled | | Augusta, GA  30912 |
| Time Zone: (UTC-05:00) Eastern Time (US & Canada) | | jkneuker@augusta.edu |
| | | IP Address: 158.93.6.13 |

### Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Julie Kneuker | Location: DocuSign |
| 10/10/2025 11:54:48 AM | jkneuker@augusta.edu | |

### Signer Events | Signature | Timestamp

| Signer Events | Signature | Timestamp |
|---|---|---|
| Julie Kneuker<br>jkneuker@augusta.edu<br>Augusta University<br>Security Level: Email, Account Authentication (None) | DocuSigned by:<br>*Julie Kneuker*<br>643A4863D64F47B...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 158.93.6.13 | Sent: 10/10/2025 11:55:04 AM<br>Viewed: 10/10/2025 11:55:10 AM<br>Signed: 10/10/2025 11:56:01 AM<br>Freeform Signing |

**Electronic Record and Signature Disclosure:**
  Not Offered via Docusign

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 10/10/2025 11:55:04 AM |
| Certified Delivered | Security Checked | 10/10/2025 11:55:10 AM |
| Signing Complete | Security Checked | 10/10/2025 11:56:01 AM |
| Completed | Security Checked | 10/10/2025 11:56:01 AM |

| Payment Events | Status | Timestamps |
|---|---|---|



Exhibit A