# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 4:25-CV-00233-RSB-BWC |
| BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA and MEDICAL COLLEGE OF GEORGIA AT AUGUSTA UNIVERSITY | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF DR. ELIZABETH GRAY

I, Dr. Elizabeth Gray, declare as follows:

1.

My name is Dr. Elizabeth Gray. The facts in this declaration are true and correct and are based on my personal knowledge and to the best of my recollection. I am over the age of majority and suffer no civil or legal disability. I give this declaration voluntarily for use in this civil action and for all other legal purposes.

2.

I am an Associate Professor in the Department of Medicine at the Medical College of Georgia at Augusta University. Since 2023, I have served as the Campus Dean for the Medical College of Georgia's Savannah campus. Prior to

this appointment, I served from 2020-2023 as the Clinical Campus Associate Dean in Savannah. As Dean, my job duties include: developing and administering a robust educational program in line with the mission and goals of MCG / Augusta University, promoting an academic environment that fosters educational excellence, and fostering partnerships with faculty, staff, administration, alumni, community leaders and students to advance the mission of MCG / Augusta University. Our Savannah campus is significantly smaller than our Augusta campus, with current accreditation allowing for up to 40 students in each class with plans to expand to 50 students in 2026. Prior to our establishment in 2024 as a full campus, we have trained students in their clinical phase of training on our Savannah campus for decades.

3.

In 2024, we added the first 18 months of preclinical education to our academic program in Savannah. At this time, we have approximately 40 students in our first year class; 40 students in our second year class; 40 students in our third year class; and 33 students in our fourth year class. John Doe was a part of the inaugural class of first year medical students on the Savannah campus, starting in 2024.

4.

I became aware of the Title IX complaint that is the subject of this lawsuit

when a Assistant Dean reported to me that Jane Roe had made an allegation of sexual misconduct. I referred Roe to the Title IX office. Other than this intake role, I did not meaningfully participate in the Title IX investigation process. I was privy to the outcome letters as well as the appeals and subsequent decisions. From what I reviewed, I agreed with the outcome and believed the process had been fair and unbiased. Throughout the investigation, I was involved in working with both parties to make sure that both could participate in their academic program as outlined by the Title IX office.

5.

I have multiple concerns about John Doe being allowed to return to campus. First, in January, he will be entering into the clinical phase of his training. This training takes place under the guidance and instruction of our volunteer faculty who give the students a varied level of autonomy in patient care. In other words, the students have opportunities to directly interact with patients alone in sensitive settings, including the examination room, in the operating room where patients may be unconscious, and across other patient care settings. When we send our learners into this environment, we are assuring our faculty that the learner is reliable and can be trusted. This assurance is necessary because these faculty are taking on the risk of supervising trainees with vulnerable patients, patients for whom the faculty physician is ultimately responsible and liable. By not divulging

to those volunteer faculty members the conclusions made by the Title IX Panel as outlined in the Title IX report, we are putting those volunteer faculty members and their patients at risk.

6.

Second, and related to the first point, we have long established relationships with the hospitals and clinical sites which have agreed to allow our learners to work in their facilities, treat their patients, and collaborate with their staff. By not divulging our conclusions regarding John Doe to these hospitals, we jeopardize our relationship with them, a relationship formed over years and based upon trust. If something were to happen with John Doe and a vulnerable patient, these clinical sites may no longer agree to accept our learners and trainees in the future.

7.

Third, I am concerned about the safety and well-being of Jane Roe. I have seen the demonstrable harm this situation has caused her. Because medical education requires a lot of group work in years three and four, and because we are a small program, it could be administratively impossible to keep them apart.

8.

Fourth, I am concerned the role of our promotions committee will be superseded if the Medical College is ordered to re-admit John Doe, despite the finding of misconduct. Typically, when there is a report of misconduct against a

student, the student is brought before our Promotions Committee, which is made up of MDs and PhDs experienced in medical education and understanding of the professional requirements of the educational program. This committee must review the conduct and decide if the student will be allowed to safely rejoin the training program. Like a medical board, the Promotions Committee's role is to ensure that students are capable of upholding the academic and professional standards of the educational program. In the case of John Doe, when the Title IX complaint was initiated, the misconduct complaints made against him and those which were made after the initial Title IX complaint were all paused from being referred to the Promotions Committee pending the results of the Title IX investigation. If the court orders John Doe back to campus, this will supersede the role of the Promotions Committee to serve as a protective mechanism to preserve the academic and professional standards of the university.

9.

I have read the above and it is true and correct and based on my personal knowledge. As provided by 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 9th day of October, 2025.

_____
DR. ELIZABETH GRAY